**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>Kevin Grant</u>
<u>Paula Grant</u>

        v.                          Civil No. 07-cv-249-JM
                                     Opinion No. 2009 DNH 096
<u>Wakeda Campground, LLC</u>


                        **O R D E R**


     The parties have filed cross motions for summary judgment
contesting whether defendant breached any foreseeable duty.

1.   **Factual Background**

     The plaintiffs, Kevin and Paula Grant, checked into
defendant's family campground at approximately 8:00 p.m. on
August 20, 2004.[1]  They had camped at Wakeda Campground several
times before and were aware the campground was "camping in the
pines," as defendant's sign advertised.  They proceeded to set up
their "pop-up" camper.  As they were preparing for bed at 9:00
p.m., a severe thunderstorm with extremely high winds moved
through the campground without warning.  The rain was a downpour
with hail and the high winds snapped trees, tree tops and

_____

     [1]The complaint erroneously alleges the date as August 21st.

branches.  A large portion of a pine tree crashed into plaintiffs' camper, injuring plaintiffs and pinning them down.

Before leaving his Vermont home that day, Kevin Grant had listened to weather reports at 12:00 noon on both WYKR radio station out of Wells River, Vermont and Channel 3 television station from Burlington, Vermont.  He did not hear any forecast for severe weather moving through Hampton Falls, New Hampshire for later that day.  Plaintiffs did not listen to any more weather forecasts while they traveled, and the weather was good when they arrived at the campground.

Defendant operates a 200-acre campground with 408 campsites. It is owned and largely operated by one family, sisters Janet Hambleton and Karen Bork, and their brother Terry Savage.  No one is specifically detailed to monitor the weather.  There was no radio or television in the camp office on August 20, 2004; however, the family owners try to stay aware of the weather by listening to WOKQ, a local radio station out of Dover, New Hampshire, or watching WMUR, the local network station out of Manchester, New Hampshire, while driving to work and eating their meals, and by hearing from campers.  None of them heard any National Weather Advisory Warning on August 20, 2004.  All were

as surprised by the storm as the plaintiffs.  In fact, the weather had been nice all that day.

On August 20, 2004, the National Weather Service Office in Grey, Maine, issued the following warnings to WKYX in Portland, Maine[2]:

|     | Number | Time | Event | Rockingham and other locales | End Threat |
|-----|--------|------|-------|------------------------------|------------|
| 1.  | 201710 | 1:50 pm | severe weather storm | Rockingham Co | 7:00 pm |
| 2.  | 201812 | 2:04 pm | thunderstorm | Rockingham Co | 3:04 pm |
| 3.  | 201902 | 2:47 pm | another storm | Rockingham Co | 3:47 pm |
| 4.  | 201934 | 3:23 pm | scattered thunderstorms | Rockingham Co | 4:23 pm |
| 5.  | 202005 | 4:04 pm | severe thunderstorms | Southern N.H. | 7:00 pm |
| 6.  | 202112 | 5:02 pm | showers and thunderstorms | Rockingham Co | offshore by 5:30 pm |
| 7.  | 20219 | 6:17 pm | severe thunderstorms | Me. Coastal | 11:00 pm |
| 8.a | 202222 | 6:19 pm | severe thunderstorms | Rockingham Co | 11:00 pm |
| b   | 202329 | 6:19 pm | severe thunderstorms | Rockingham Co | 11:00 pm |

---

[2]Neither side provided any information about any warnings to WOKQ or WMUR, the stations defendant's employees listened to and watched.

| c   | 202331 | 6:19 pm | severe thunderstorms | Rockingham Co | 11:00 pm |
|-----|--------|---------|----------------------|---------------|----------|
| 9.  | 210052 | 8:44 pm | thunderstorms        | Rockingham Co | 9:44 pm  |
| 10. | 210140 | 9:30 pm | severe thunderstorms | Rockingham Co | 10:30 pm |
|     |        |         |                      |               |          |

There is no evidence that any employee of defendant listened to WKYX on August 20, 2004 or on any other date.  There also is no evidence that defendant or any of its employees were made aware of these National Weather Service reports by any other means.

   **2.  Standard of Review**

   Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[A]n issue is 'genuine' if the evidence presented is such that a reasonable jury could resolve the issue in favor of the nonmoving party and a 'material' fact is one that might affect the outcome of the suit under governing law."  Fajardo Shopping Ctr. v. Sun Alliance Ins. Co., 167 F.3d 1, 7 (1st Cir. 1999).  The facts must be viewed in the light most favorable to

4

the non-moving party, construing all reasonable inferences and all credibility issues in his favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000).  The burden of showing an absence of any genuine issues of material fact lies with the moving party.  See Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001).  Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the nonmoving party.  See Anderson, 477 U.S. at 248.

On cross motions for summary judgment, as are presently before the court, the standard of review is applied to each motion separately.  See Am. Home Assur. Co. v. AGM Marine Contrs. Inc., 467 F.3d 810, 812 (1st Cir. 2006); see also Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006) ("The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review.").  Here both plaintiff and defendants argue the record contains no genuine issue of material fact and that judgment can be entered in their respective favor. The matter, therefore, is appropriate for summary disposition. See Quinn v. City of Boston, 325 F.3d 18, 28 (1st Cir. 2003) (using summary judgment to promptly resolve cases).

### 3.  Discussion

While there are some disputed facts in the case, the facts related above are those that are material to deciding these motions and are undisputed.

Plaintiff has alleged three theories for recovery:

a.  Defendants failed to exercise due care in keeping its property in a reasonably safe and suitable condition so that its invitees and customers would not be exposed to unnecessary or unreasonable danger;

b.  Defendants failed to exercise due care in following the weather reports and warning its invitees and customers of approaching weather which would create hazardous conditions within the campground and expose their invitees and customers to unnecessary or unreasonable danger; and

c.  Defendants failed to exercise due care in failing to close their campground when severe weather would expose their invitees and customers to unnecessary and unreasonable danger.

Each of these theories asserts a duty of care that defendant allegedly owed to plaintiffs and breached.  It is well settled that "owners and occupiers of land owe plaintiffs a duty of reasonable care under all the circumstances in the maintenance and operation of their property."  <u>Werne v. Executive Women's Golf Ass'n</u>, 158 N.H. 373, 376, 969 A.2d 346, 348 (2009); <u>see also</u>

<u>Kellner v. Lowney</u>, 145 N.H. 195, 197, 761 A.2d 421, 423 (2000).[3]
Defendant landowner has the duty to keep the property safe for
his invitees, but must only exercise the care of a person of
average prudence in maintaining the premises.  <u>See</u> <u>Cable v.</u>
<u>Donahue & Hamlin, Inc.</u>, 85 N.H. 258, 259-60, 161 A. 383, 384
(1931) (discussing campground owner's duty to protect plaintiff
camper from falling over an embankment); <u>see</u> <u>also</u> W. Page Keeton,
et al., <u>Prosser & Keeton on The Law of Torts</u> (5th ed. 1984), § 61
at 425.  Whether a duty exists in a particular case is always a
question of law.  <u>See</u> <u>Brown v. United States</u>, 557 F.3d 1, 3 (1st
Cir. 2009) (explaining the legal question of whether a duty is
owed is "grist for the summary judgment mill"); <u>see</u> <u>also</u>
<u>Belhumeur v. Zilm</u>, 157 N.H. 233, 236, 949 A.2d 162, 165 (2008)
(citing <u>Walls v. Oxford Mgmt. Co.</u>, 137 N.H. 653, 656, 633 A.2d
103 (1993)).  "Under [New Hampshire] law, in order for a duty to
exist on the part of a landowner, it must be foreseeable that an
injury might occur as a result of the landowner's actions or
inactions."  <u>Kellner</u>, 145 N.H. at 198, 761 A.2d at 424.  With
these standards in mind, I turn to plaintiffs' theories of

---

[3]Since this action was brought under the court's diversity
jurisdiction, New Hampshire law governs.  <u>See</u> <u>Hernandez v. Philip</u>
<u>Morris USA, Inc.</u>, 486 F.3d 1, 11 (1st Cir. 2007) (citing <u>Erie</u>
<u>R.R. v. Tompkins</u>, 304 U.S. 64, 78 (1938)).

liability.

        a.   <u>Duty to Keep Property Safe</u>

As part of a landowner's general duty to keep his property reasonably safe, having a campground with campsites among the trees may well create a duty to keep the trees "limbed" of dead limbs and to take down dead and diseased trees. <u>See</u> <u>Lesser v. Camp Wildwood</u>, 282 F. Supp. 2d 139, 149 (S.D.N.Y. 2003) ("In cases involving fallen trees or branches, landowner will only be held liable if he or she knew or should have known about a defective condition of the tree."). While there clearly is no duty to clear cut defendant's land, defendant reasonably may be charged with the duty of regularly inspecting trees and removing those which potentially could create a danger or hazard. <u>See</u> <u>id.</u>; <u>see also</u> <u>DeAmiches v. Popczun</u>, 35 Ohio St. 2d 180, 183, 299 N.E.2d 265, 267 (1973) (creating duty if landowner has knowledge of and control over a perilous condition unknown to plaintiff); <u>Prosser & Keeton</u>, § 61 at 425-26 (requiring landowner to inspect premises to discover possible dangers).

The evidence with respect to the condition of the trees was primarily provided in the deposition of Terry Savage, one of the owners of Wakeda Campground. He testified that he and his father

are "always looking at the trees", checking "to see what the condition of the trees are." Pls.' Cross Mot. Summ. J. (document no. 16), Exh. 9, Dep. of Terry M. Savage (document no. 16.10) at 29. They remove dead trees. <u>See</u> <u>id.</u> Another owner, Janet Hambleton, testified that until August 20, 2004, the camp "never had serious storm damage." <u>See</u> Pl.'s Mem. in Supp. of Obj. to Def.'s Mot. for Summ. J. (document no. 15)[4], Exh. 1, Dep. of Janet S. Hambleton (document no. 15.2) at 59. In fact, there is no evidence that the tree which injured plaintiffs was dead or unhealthy. Plaintiffs even provided hearsay evidence that an arborist inspected the downed trees after the event and said the trees were healthy.

The burden of proof is on the plaintiffs to show defendants breached their duty to keep the property safe. The only hint in support of this claim is that trees lost branches and/or tops and/or were toppled by the storm. The complaint does not set forth any facts in support of the alleged breach of the duty to keep the property safe; and the plaintiffs have proffered little in support of their summary judgment motion to substantiate the

---

[4]The memoranda of law in support of plaintiffs' Cross Motion for Summary and their Objection to Defendant's Motion for Summary Judgment are identical and will be referred to hereinafter as "Pls.' Mem. in Support." <u>Cf.</u> Document nos. 15.1 and 16.1.

complaint's allegation.  "[A]n absence of evidence on a critical

issue weighs against the party . . . who would bear the burden of

proof on that issue at trial."  <u>Perez v. Volvo Car Corp.</u>, 247

F.3d 303, 310 (1st Cir. 2001).

Plaintiffs have not carried their burden of proof on this

issue.  Defendant is granted summary judgment on its duty to keep

the property safe.

b.  <u>"Weather" Duties</u>

Plaintiffs allege that defendant owed them a duty to monitor

weather reports, warn them of approaching weather which could

create hazardous conditions and close the campground when severe

weather would expose them to unreasonable danger.  The parties

agree that none of defendant's owners or employees knew of the

weather advisories and, obviously therefore, did not provide any

warning nor evacuate the campground.  Since a landowner like

defendant must exercise reasonable care for the protection of

people invited onto its property as plaintiffs were, the question

raised by these alleged duties is whether defendant's duty to

keep the premises reasonably safe includes a duty to monitor the

weather and make corresponding adjustments to the campground.

Defendant could only be held responsible for not warning and

evacuating if it knew or should have known of the approaching severe thunderstorm.  Since it is undisputed that defendant did not know, the only issue is whether it should have known to monitor weather reports and warn about ominous storms.

Essentially, plaintiffs claim that any campground with healthy trees in New Hampshire has a duty to constantly monitor weather forecasts and to warn campers and evacuate the campsites every time the weather service issues a severe thunderstorm warning for the area.  No New Hampshire case or statute currently imposes such a duty.  The facts are uncontradicted that defendant did not voluntarily undertake a policy of monitoring the weather and providing warnings.  Had defendant done so, plaintiffs could have reasonably relied on defendant for weather information, because New Hampshire law recognizes that one "who voluntarily renders services for another . . . [may be] held to a duty of reasonable care in acting." Walls, 137 N.H. at 656, 633 at 105 (1993) (citing Restatement (Second) of Torts (1965), §§ 323, 324).  Likewise, for example, courts have held that golf courses that employ a procedure for monitoring weather to protect patrons from lightning owe a duty of care to ensure the procedure is reasonably safe.  See Sall v. T's, Inc., 281 Kan. 1355, 1361, 136

P.3d 471, 476 (2006); <u>Maussner v. Atlantic City Country Club,</u>
<u>Inc.</u>, 299 N.J. Super. 535, 553, 691 A.2d 826, 835 (App. Div.
1997).  Absent an industry standard or a voluntary undertaking to
do so, neither of which exists here however, "no case has ever
imposed a duty on property owners to constantly monitor weather
forecasts."  <u>Bowman v. State</u>, 206 S.W.3d 467, 473 (Tenn. Ct. App.
2006).

Under the circumstances, it is necessary to "provide our
'best guess' as to open questions of state law," although the
court should "tread lightly in offering interpretations of state
law where controlling precedent is scarce."  <u>Noonan v. Staples,</u>
<u>Inc.</u>, 556 F.3d 20, 30 (1st Cir. 2009).  The New Hampshire Supreme
Court has stated that:

> persons owe a duty of care only to those
> who are foreseeably endangered by their
> conduct and only with respect to those
> risks or hazards whose likelihood made
> the conduct unreasonably dangerous . . ..
> Not every risk that might be foreseen gives
> rise to a duty to avoid a course of conduct;
> a duty arises because the likelihood and
> magnitude of the risk perceived is such that
> the conduct is unreasonably dangerous.

<u>Manchenton v. Auto Leasing Corp.</u>, 135 N.H. 298, 304, 305, 605
A.2d 208, 213, 214 (1992) (citing authority).  Since the duty
owed is a question of law, courts are to examine:  (1) the

societal interest involved; (2) the severity of the risk, (3) the likelihood of occurrence, (4) the relationship between the parties, and (5) the burden upon the defendant.  See Hungerford v. Jones, 143 N.H. 208, 211–12, 722 A.2d 478, 480 (1998) (citing Restatement (Second) of Torts, § 291 (1965)).  "[T]he scope of the duty imposed is limited by what risks, if any, are reasonably foreseeable."  Walls, 137 N.H. at 656, 633 A.2d at 105.

New Hampshire courts have applied these principles in the context of landowners of recreational sports facilities that, though not directly applicable, provide guidance on what to consider in determining the scope of defendant campground's duty to protect plaintiff campers from severe storms.  In the context of recreational sports activities, the duty owed depends on:  the nature of the sport involved; the type of contest; the ages, physical characteristics and skills of the participants; the type of equipment involved; and the rules, customs and practices of the sport.  See Allen v. Dover Co-Recreational Softball League, 148 N.H. 407, 418, 807 A.2d 1274, 1285 (2002).  These factors are intended to limn the defendant's duty to a standard of care that recognizes the inherent risks of the sport and protects defendant from liability for injuries that are reasonably caused by "the

range of ordinary activity involved in the sport." Id. Allen
instructs that defendant can only be held liable for plaintiff's
injuries if defendant's conduct unreasonably created a risk that
was not typical of or inherent in camping.

As experienced campers, plaintiffs certainly understood that
an inherent risk of camping in the woods, arguably an attractive
reason for going camping, was subjecting themselves to the forces
of nature, including specifically the smell, sound and feeling of
wind and rain in the trees.  Accordingly, for their negligence
claim to survive, defendant's conduct must be found to have
unreasonably created a risk that was "totally outside" what
plaintiffs would have expected when they chose to go camping.
See id.; see also Werne, 158 N.H. at 376, 969 A.2d at 348 ("[A]
land owner operating a sports facility who creates only [the]
risks that are normal or ordinary to the sport [at issue] acts as
a reasonable person of ordinary prudence under the circumstances"
(internal quotation omitted)).  To ascribe to defendant
responsibility for plaintiffs' injuries caused by the storm,
defendant must be found to have breached a standard of care that
required taking precautionary steps in the form of constant
monitoring of the weather and then adequate warning about it,

including closing the campground, to protect campers from forecasted storms.  After substantial research has failed to discover a single case imposing such a duty on campgrounds, I find that New Hampshire law would not expand the duty of care defendant owed to keep its campground reasonably safe to include constant monitoring of and warning about the weather, for the following reasons.

First, the landowner's duty of care is premised on the idea that as the owner and occupier of the property, he is in a position of superior knowledge about its condition.  See Prosser & Keeton, § 61 at 425–26 (requiring the landowner to know of hidden dangers and take reasonable precautions to protect the invitee from dangers that are foreseeable from the use of the property); see also Cable, 85 N.H. at 260, 161 A.2d at 384 (requiring defendant to properly warn of dangerous pitfall on his property); DeAmiches, 35 Ohio St. 2d at 183, 299 N.E.2d at 267 (imputing liability to landlord who knows of perilous conditions that the injured person does not know).  When, however, the landowner is not in a position to know of a risk better than an invitee on his property, then the landowner does not have a duty to protect the invitee from that risk.  See Sun v. Gov'tl Auths.

of Taiwain, No. C 94-2769 SI, 2001 WL 114443, *10 (N.D. Cal. Jan. 24, 2001) (exercise of ordinary care does not include a duty to warn another of a danger equally obvious to both); see also DeAmiches, 35 Ohio St. 2d at 184, 299 N.E.2d at 267 (citing 2 Harper & James, The Law of Torts § 1491 for the rule that "the obvious character of the condition is incompatible with negligence in maintaining it").

> [I]n the usual case, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them.  Against such conditions it may normally be expected that the visitor will protect himself.

Id. (quoting Prosser & Keeton, (3rd ed.) § 403).  While the actual storm which caused the plaintiffs' injuries was not obvious to either defendant or plaintiffs here because of its sudden emergence, the likelihood of being caught in a summer thunderstorm while camping was a danger as apparent and obvious to plaintiffs as it was to defendant.

Second, unless voluntarily assumed as in the golf course cases cited above, there is no duty to monitor weather because "[f]orecasts . . . do not, by themselves, constitute actual or constructive notice of dangerous conditions requiring a property

owner to begin taking steps either to prevent or to remove [the hazards that might follow]." Bowman, 206 S.W.3d at 473 (finding no negligence in state's failure to clear parking lot of snow and ice that had just accumulated).  The unreliability of forecasts has been recognized by other courts and has excused a defendant's failure to prevent hazardous conditions that were caused by weather.  See e.g. McGaskey v. Nat'l Auto. Ins. Co., 998 So. 2d 788, 792 (La.App. 3 Cir. 2008) (holding "the 'possibility' of icy conditions does not equate to constructive notice thereof" to have required the state to salt a bridge that froze); see also Croce v. Hall, 657 A.2d 307, 312 (D.C. 1995) (finding landlord does not have a duty to constantly monitor the weather).  Because weather forecasts are often wrong, they cannot be the basis of imputing superior knowledge on a landowner defendant that gives rise to the duty to protect a plaintiff invitee from weather conditions that actually occur.

Both the inherent unreliability of weather forecasts and the fact that weather changes constantly justify not imposing on defendant a greater duty to monitor the weather than can be expected of plaintiffs.  See id. (citing cases).

> In general, changes in the weather are a
> part of everyday life, and citizens can

17

> be expected to adjust to them without
> demanding extraordinary efforts on the
> part of others.  Furthermore, as appellee
> points out, weather predictions are often
> wrong, and may vary depending on the identity
> of the forecaster. . .. [Weather] reports
> are competent to prove weather conditions
> in the locality but, standing alone, they
> cannot establish the required notice to
> the [defendant] of the existence of a
> particular obstruction . . . its duration,
> or its dangerous character.

Id. (quotations omitted).  Defendant's duty of care is limited to

keeping his property reasonably safe from known risks of danger.

Because monitoring the weather would not necessarily provide

defendant with either constructive or actual notice of a

dangerous condition on his property, there is no basis to impose

a duty to monitor the weather as part of the duty to keep the

property safe.  The injury that occurred here is simply too

attenuated to be a foreseeable risk of defendant's failing to

monitor the weather.

     In fact here, the weather forecasts plaintiffs cite as those

defendant had a duty to monitor would not have provided the

information needed in enough time for defendant to have taken

precautionary steps to protect plaintiffs.  The weather alerts

numbered 1-6 in the fact statement could not give rise to any

duty to warn plaintiffs at their 8:00 p.m. check-in, because the

time at which the alert indicated that the threat would end had
already passed.  Alert number 7 was a warning for the Maine
coast, not for southern New Hampshire.  Alert 10 was issued after
the storm had passed over the campground.  The only possible
relevant alerts, then, are alert numbers 8 and 9, at 6:19 p.m.
and at 8:44 p.m. respectively, which warned of severe
thunderstorms.  Those alerts were the same as three similar storm
warnings issued by the National Weather Service earlier in the
day that had not materialized.  At best they provided
constructive notice that strong rain and wind were predicted.
They cannot be understood as having provided constructive notice
or actual knowledge that the August 20, 2004 storm that occurred
would happen or would cause the damage that it did.

Finally, the factors to be considered when determining
whether a duty should be imposed weigh against creating the duty
plaintiffs request here.  See Hungerford, 143 N.H. at 211–12, 722
A.2d at 480 (listing factors); see also Leach v. Mountain Lake,
120 F.3d 871, 873 (8th Cir. 1997) (finding bailor of boats had no
duty to warn bailee of storm during which plaintiff drowned).
Any societal interest that may exist to impose this burden on
defendant is better left for the legislature to determine, as it

has in the context of weather-related injuries that occur in ski areas.  See gen. N.H. Rev. Stat. Ann. Ch. 225-A (dealing with skiers, ski area and passenger tramway safety) and RSA 225-A:24 (listing responsibilities of skiers and passengers).  Without minimizing the severity of the actual injuries plaintiffs sustained, the evidence showed that both the risk and the likelihood of that injury occurring are extremely small. Defendant's agents testified that in the forty-three years they have operated the camp, they never had a freak storm like the one in this case and never had storm damage like that which occurred. Plaintiffs' meteorologist avers that New Hampshire can experience severe thunderstorms which can damage trees, but that New Hampshire averages only two tornadoes per year.  Based on this evidence, I cannot conclude as a matter of law that a severe thunderstorm would cause a healthy tree branch to fall on plaintiffs with such regularity that it would be deemed foreseeable for purposes of creating a duty to monitor the weather.

    "To impose a constant monitoring duty on [defendant] would be unreasonable and unrealistic."  McGaskey, 998 So. 2d at 793. Weighing the additional burden on defendant to impose such a

duty, including the fact that those costs would be passed along to campers, along with the fact that campers at this campground are adults, not children or some other group for which the law affords a higher duty of care, the factors all point to not creating the duties plaintiffs ask to have imposed.  The ability of plaintiffs to have monitored the weather and have taken those precautionary measures they deemed appropriate was not in any way dependent on what defendant campground did or did not tell them.  See Leach, 120 F.3d at 873 (excusing marina from warning boaters of severe storm).  Given the scarcity of New Hampshire tornados, the number of warned severe thunderstorms that do not materialize, a camper's own awareness of weather and conditions, the lack of prior damage and the non-existence of industry standards, the foreseeable risk is not sufficiently likely to make a failure to monitor the weather, particularly continuously,[5] unreasonably dangerous.

Without a duty to monitor, the derivative duties of warning and evacuating the campground do not follow.  "Absent a duty, there is no negligence."  Walls, 137 N.H at 656, 633 A.2d at 104.

---

[5]Assuming, as plaintiffs apparently do, that the two advisories actually aired on radio and television receivable at the campground, there is no evidence of how long after the alert they were on the air.

Because there was no duty that defendant breached, defendant's failure to monitor the weather, warn plaintiffs about the storm and evacuate the campground was not negligent.  Defendant is granted summary judgment on the weather-related duties.

### Conclusion

Defendant's motion for summary judgment (document no. 10) is granted.  Plaintiffs' cross-motion (document no. 12) is denied.

**SO ORDERED.**


_____
James R. Muirhead
United States Magistrate Judge

Date: June 29, 2009

cc:   David P. Cullenberg, Esq.
      Christie Burnett, Esq.
      Scott R. Behman, Esq.